RENDERED: MAY 21, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1595-MR

DAVID HATFIELD AND AMANDA J.
HATFIELD                                                          APPELLANTS


APPEAL FROM BOYLE CIRCUIT COURT
v.         HONORABLE DARREN W. PECKLER, JUDGE
ACTION NO. 17-CI-00301


BLUEGRASS COMMUNITY BANK,
INC.; J. THOMAS HENSLEY,
MASTER COMMISSIONER OF
BOYLE COUNTY; SALLY STATOM;
STEVE P. KIESLER; AND THE
MONTICELLO BANKING
COMPANY                                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, MAZE, AND TAYLOR, JUDGES.

JONES, JUDGE: Acting without the assistance of counsel, the Appellants, David

Hatfield and his wife, Amanda Hatfield ("Hatfields"), appeal the Boyle Circuit

Court's orders of September 18, 2019, overruling their objections to the Master

Commissioner's report, and confirming the sale of a parcel of real estate located at 1145 Gwinn Island Road in Danville, Boyle County, Kentucky ("the Property"). The Appellees are Bluegrass Community Bank, Inc. and the Monticello Banking Company; J. Thomas Hensley Master Commissioner of Boyle County; and Steve P. Kiesler and Sally Statom, the parties who purchased the property at the judicial sale.[1] On appeal, the Hatfields assert the trial court erred because the appraised value set by the Master Commissioner was too low. Having reviewed the record, and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

On August 22, 2017, Bluegrass Community Bank, Inc. ("Bluegrass") filed a complaint against the Hatfields. Bluegrass alleged that on or about June 17, 2015, the Hatfields executed and delivered to Bluegrass a Promissory Note by which they promised and agreed to pay the sum of $144,724.44, with interest accruing thereon, initially, at a fixed rate of 5.5%, due in full on June 27, 2035 ("Note"). The Promissory Note was secured by a mortgage in favor of the

---

[1] None of the appellees filed a brief. When the appellee does not file a brief our court may, but is not required to impose penalties, against the non-responding appellee, including (1) accepting the appellant's statement of facts and issues; (2) reversing the judgment if reasonably supported by the appellant's brief; or (3) regarding the appellee's failure to file a brief as a confession of error and reversing the judgment without considering the merits of the case. Kentucky Rules of Civil Procedure ("CR") 76.12(8)(c). "The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Coblentz v. Day*, 540 S.W.3d 384, 385-86 (Ky. App. 2018) (citing *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007)). The record in this case is relatively short and the issues are straightforward. Accordingly, we have elected not to impose a penalty, and will proceed to review the merits of this appeal in the normal course.

Property.[2]  Bluegrass further alleged that the Hatfields defaulted under the terms of the Note.  As of August 1, 2017, Bluegrass alleged the Hatfields were jointly and severally liable to it for $140,590.49 plus accruing interest, late fees, expenses, attorney's fees, and court costs, as also provided for under the Note.  By virtue of the mortgage, Bluegrass alleged it had a valid and existing first lien on the Property to secure payment of all sums owed under the Note, and that terms of the mortgage provided for the filing of an action to sell the Property in the event of a default by the Hatfields.

As relief, Bluegrass sought:  (1) a judgment against the Hatfields, jointly and severally, in the principal sum of $140,590.49 plus interest at the agreed rate, late fees, expenses, court costs, and attorney's fees; (2) that the court adjudge that Bluegrass had a valid and enforceable first lien on the Property; and (3) that if the court ordered the Property be sold, a sufficient portion of the net proceeds of such sale (after paying the current year's property taxes and the costs of selling the property) be remitted to Bluegrass to fully satisfy any judgment against the Hatfields.

The Hatfields were individually served with copies of Bluegrass's complaint on September 4, 2017.  They did not file an answer or responsive

---

[2] It does not appear that the Hatfields resided at the Property.  It is described as being approximately one acre with a 50-foot by 145-foot building located thereon, and commercial in nature.

pleading. Accordingly, on November 27, 2017, Bluegrass filed a motion for default judgment. By order entered December 28, 2017, the trial court granted Bluegrass a default judgment against the Hatfields in the amount of $140,590.49, as of August 1, 2017, plus interest at the agreed legal rate, late fees, costs and attorneys' fees. It further adjudged that Bluegrass had a valid lien on the Property.

On May 29, 2018, Bluegrass moved for an order directing sale of the Property to satisfy its judgment against the Hatfields. On June 5, 2018, the trial court granted Bluegrass's motion and referred the matter to the Master Commissioner for a judicial sale. However, the sale was stalled when the Hatfields filed for Chapter 13 bankruptcy. After the Hatfields bankruptcy action was dismissed for failure to make the required filings, Bluegrass removed the trial court to reinstate the judicial sale. Bluegrass's motion was granted, and on December 10, 2018, the matter was again referred to the Master Commissioner for a judicial sale.

Two "disinterested housekeepers" of Boyle County were appointed to appraise the Property. On July 3, 2019, they filed a sworn affidavit attesting they appraised the value of the property to be $63,000.00. A judicial sale was conducted on July 23, 2019, at which Steve Kiesler and Sally Statom purchased the property for $43,000.00. Since the purchase price was over two-thirds of the

appraised value, the Hatfields could not claim a right of redemption. On July 24, 2019, the Master Commissioner filed a report of sale.

Acting with the assistance of counsel, on August 3, 2019, David filed exceptions to the Master Commissioner's Report of Sale and requested an evidentiary hearing.[3] The motion argued the appraised value set by the Master Commissioner was so low as to be unconscionable where: (1) in 2005 the Property was appraised with a market value of $155,000.00; (2) on June 17, 2015–just four years prior–Bluegrass loaned the Hatfields $144,724.44 based on the value of the Property; (3) that the tax assessed value of the Property was $70,000.00; and (4) that upon information and belief a prospective buyer had offered Bluegrass $80,000.00 prior to sale. The motion included David's affidavit, a copy of the 2005 appraisal, and the affidavit of Kevin Cooley, a "longtime friend" of David. Mr. Cooley averred that he was familiar with the Property and based on his familiarity with the area believed the Commissioner's appraisal was "dramatically understated and unconscionable."

On September 16, 2019, the trial court conducted an evidentiary hearing on the objection. Two days later, on September 18, 2019, the trial court overruled David's exceptions finding "the appraisal entered on July 3, 2019, stands as correct and valid" and denying David's motion to assign a different value to the

---

[3] It is unclear why Amanda did not join in the exceptions.

property. A separate Confirmation of Sale was also entered on September 18, 2019.

This appeal followed.

## II. ANALYSIS

The disposition of property through a judicial sale requires the court to "refer the matter to the master commissioner or appoint a commissioner to conduct a public sale[.]" KRS 389A.030(4). "[T]he terms of a judicial sale are ultimately determined by the circuit court; and the court may accept or reject the master commissioner's suggestions." *Sterling Grace Mun. Securities Corp. v. Central Bank & Tr. Co.*, 926 S.W.2d 670, 673 (Ky. App. 1995). We review the trial court's finding as to the appraised value for an abuse of discretion. *Eagle Cliff Resort, LLC v. KHBBJB, LLC*, 295 S.W.3d 850, 852-53 (Ky. App. 2009).

The Master Commissioner's report set the appraised value of the Property at $63,000.00. Two-thirds of this amount is $42,000.00. Mr. Kiesler and Ms. Statom purchased the property at the judicial sale for $43,000.00 thereby cutting off the Hatfields' right of redemption. KRS 426.530. "When a party whose redemption rights are at stake believes the appraisal of his property is inadequate in any way, he is entitled to an evidentiary hearing to determine whether the appraisal was 'irregular, fraudulent, or so erroneous as to be

-6-

unconscionable[.]'" *Eagle Cliff Resort*, 295 S.W.3d at 852-53 (quoting *Burchett v. Bank Josephine*, 474 S.W.2d 66, 68 (Ky. 1971)).

As required, the trial court conducted a hearing at which the Hatfields were given an opportunity to introduce evidence regarding the appraisal process and value assigned to the Property. With respect to the appraisal process, the Hatfields failed to show that there was any irregularity or fraud. KRS 426.520 establishes the requirements for real property sold under an order or judgment of court. It provides:

> (1) Before any real property is to be sold under an order or judgment of a court, other than an execution, the commissioner or other officer selling the property shall have it appraised, under oath, by two (2) disinterested, intelligent housekeepers of the county, who may be sworn by the officer. If they disagree, the officer shall act as umpire. If only a part of a tract of land is sold, the part sold shall, after the sale, be revalued in like manner.
>
> (2) The appraisal made shall be in writing, signed by the persons making it, and returned by the commissioner or officer to the court which made the order or rendered the judgment for the sale of the property. Prior to the sale, the appraisal shall be filed among the papers of the cause in which the judgment was rendered or the order made, and entered on the records of the court.

KRS 426.520. The record confirms that this statute was followed.

Moreover, we disagree that the Hatfields' evidence was so compelling as to require a finding that the Commissioner's appraisal value was unconscionable. The 2005 appraisal was performed almost fifteen years prior to

the sale. Its age alone calls its reliability into question. While Kevin Caudill, the appraiser, testified on behalf of the Hatfields that he believed the estimate by the Master Commissioner was erroneous insomuch as it discounted the property more than 30%, he did not testify to any actual fraud or irregularity. Finally, the tax assessment of $70,000.00 is only $7,000.00 more than $63,000.00 set by the Master Commissioner. Such a small discrepancy is insufficient to compel a finding of unconscionability.

Finally, we cannot agree with the Hatfields that the testimony of Ray Preston, one of the two appraisers, compelled a finding in their favor. The fact that Mr. Preston could not recall the precise details of a property he appraised over two months prior is not entirely surprising, and it is certainly not indicative of fraud or irregularity. And, contrary to the Hatfields' implications otherwise, there is no requirement for an appraiser to go onto the property. *See Southwood v. Willis*, 222 Ky. 782, 2 S.W.2d 660, 660 (Ky. 1928).

### III. CONCLUSION

In sum, we can discern no abuse of discretion by the trial court. Accordingly, for the reasons set forth above, we affirm the Boyle Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:       NO BRIEF FOR APPELLEES.

David Hatfield, *pro se*
Amanda Hatfield, *pro se*
Danville, Kentucky